UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD H.,

                          Plaintiff,

v.                                                5:17-CV-00515

                                                      (DNH/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

_____

APPEARANCES:                          OF COUNSEL:

STANLEY LAW OFFICES, LLP       STEPHANIE VISCELLI, ESQ.
*Attorney for Plaintiff*
215 Burnet Avenue
Syracuse, New York 13203

HON. GRANT JAQUITH            JOSHUA L. KERSHNER, ESQ.
Interim United States Attorney for the   Special Assistant United States Attorney
  Northern District of New York
*Attorney for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL      STEPHEN P. CONTE, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT AND RECOMMENDATION

      This matter was referred to the undersigned for report and recommendation by the

Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with

General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed briefs.  Oral argument was not heard.  For the reasons discussed below, the Court recommends that the decision of the Commissioner be affirmed and the Complaint (Dkt. No. 1) be dismissed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Richard H. was born on April 23, 1977, and lives with his wife and children.  (Administrative Transcript at 42-43, 231-32.[1])  He completed 9th grade and earned a GED in 1994.  (T. at 37, 283.)  Plaintiff reported past work as a dozer operator, laborer, maintenance worker, shipper, and tire lube express worker.  (T. at 283.)  He has not worked since July 7, 2013.  (T. at 282.)  Plaintiff alleges disability due to diabetes, diabetic ulcers, depression, and bipolar disorder.  (T. at 282.)

On July 9, 2013, Plaintiff protectively filed an application for supplemental security income ("SSI"), alleging disability as of July 7, 2013.  (T. at 231.)  The application was denied on September 12, 2013.  (T. at 104-07.)  Thereafter, Plaintiff filed a written request for a hearing on September 19, 2013.  (T. at 111-12.)  A hearing was held on January 6, 2015, before Administrative Law Judge ("ALJ") John P. Ramos.  (T. at 32-55.)  The hearing was continued on May 11, 2015 (T. at 56-71), and again on July 6, 2015.  (T. at 72-93.)  At the hearings, Plaintiff was represented by Matthew Nutting of Stanley Law Office, LLP.  *Id.*  On August 21, 2015, the ALJ issued a decision finding that Plaintiff was not disabled.  (T. at 13-26.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's

---

[1]  The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.

request for review on March 16, 2017.  (T. at 1-6.)  Plaintiff timely commenced this action on

May 9, 2017.  (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits[2]

To be considered disabled, a plaintiff seeking SSI disability benefits must establish that

he or she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority, 42 U.S.C. § 405(a), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 404.1520(a)(4).  Under that five-step

sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or

---

[2]  While the SSI program has special economic eligibility requirements, the requirements for
establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) (SSI) and Title II, 42 U.S.C. §
423(d) (Social Security Disability Insurance), are identical, so that "decisions under these
sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414,
418 n.3 (2d Cir. 1983) (citation omitted).

> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v.

Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.

1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the

defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of

working. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by

substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision. 42

U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]."  *Rosado*, 805 F. Supp. at 153.  A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

The ALJ found Plaintiff has the following severe impairments: obesity, diabetes with diabetic peripheral neuropathy and diabetic foot ulcers, status post right first and fourth toe amputations, left-sided carpal and cubital tunnel syndrome, left shoulder degenerative joint

disease, and degenerative disc disease of the lumbar spine.  (T. at 16-18.)  He found Plaintiff did

not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. at

18-19.)  The ALJ found Plaintiff has the residual functional capacity ("RFC"), to:

> perform sedentary work as defined in 20 CFR 404.1567(a),
> because the claimant is able to lift and/or carry ten pounds
> occasionally.  The claimant is able to stand and/or walk for
> intervals of up to thirty minutes and for two hours total in an eight-
> hour workday.  The claimant is able to sit for intervals of up to
> four hours and for eight hours total in an eight-hour workday.
> Although the claimant is only able to occasionally push and pull
> with his left hand, he has no manipulative or reaching limitations.
> The claimant is unable to operate foot controls and he is unable to
> work at unprotected heights.

(T. at 19.)  In reaching this conclusion, the ALJ afforded "significant weight" to the opinions of

consultants Eric Puestow, M.D., Dennis M. Noia, Ph.D., and G. Kleinerman, M.D., and "reduced

weight" to the opinion of Plaintiff's treating family physician, Andrew Hathaway, M.D.  (T. at

22-24.)  The ALJ found Plaintiff unable to perform his past relevant work (T. at 24); and

considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are

jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T. at

24-25.)  The ALJ concluded Plaintiff has not been under a disability within the meaning of the

SSA from July 7, 2013, to the date of his decision.  (T. at 26.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff claims the ALJ erred (1) in finding his anxiety and bi-polar disorders non-

severe; (2) in making a RFC determination which was not supported by substantial evidence

because the ALJ allocated inadequate weight to the opinion of Plaintiff's treating physician and

the credibility determination was incorrect; and (3) in basing his step five finding on a

hypothetical question posed to the vocational expert that was not supported by the medical record evidence.  (Dkt. No. 10.)  Defendant contends the ALJ's decision applied the correct legal standards and is supported by substantial evidence.  (Dkt. No. 13.)

## V.    ANALYSIS

### A.    Mental Impairments as Non-Severe

Plaintiff initially argues the ALJ erred at step two of the sequential evaluation in finding that his mental impairments were non-severe.  (Dkt. No. 10 at 6-7. [3])  The Court disagrees and finds the ALJ's determination in this regard based upon correct legal principles and supported by substantial evidence.

At the second step of the evaluation, the medical severity of a claimant's impairments is considered.  20 C.F.R. § 404.1520(a)(4)(ii).  A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.* §§ 404.1520(c), 404.1521.  "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs."  *Id.* § 404.1521(b).  These include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting.  *Id.*; *see also Ianni v. Barnhart*, Civ. No. 02-74A, 2005 WL 3220220, *11 (W.D.N.Y. Nov. 18, 2005) and *Camacho v. Apfel*, Civ. No. 97-6151, 1998 WL 813409, at *6 (E.D.N.Y. July 22, 1998).  The claimant bears the burden of presenting evidence to establish severity.  20 C.F.R. § 404.1512(c).  The claimant

---

[3]  Page references to the parties' briefs identified by docket number are to the numbers assigned by the Court's CM/ECF electronic docketing system.

must demonstrate "that the impairment has caused functional limitations that precluded him from engaging in any substantial gainful activity for one year or more." *Perez v. Astrue*, 907 F.Supp.2d 266, 272 (N.D.N.Y. 2012) (citing *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)). A finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work. *Id*. at 271; SSR 85-28, 1985 WL 56858, at *2 (1985).

The regulations require application of a special technique at the second and third steps of the five-step framework for evaluating the severity of mental impairments. 20 C.F.R. § 404.1520a.

> Where the alleged disability consists of a mental impairment, a special procedure must be followed at each level of administrative review 'in evaluating the severity of mental impairments for adults . . . .' §§ 404.1520a(a), 416.920a(a). First, 'the pertinent signs, symptoms, findings, functional limitations, and effects of treatments contained in [the] case record' must be recorded. §§ 404.1520a(b)(1), 416.920a(a). Second, if a mental impairment is determined to exist, then the Commissioner 'must indicate whether certain medical findings which have been found especially relevant to the ability to work are present or absent.' §§ 404.1520a(b)(2), 416.920a(b)(2). Next, the degree of functional loss resulting from the impairment must be rated on a scale ranging from no limitation to severe limitation which is incompatible with the ability to do work-like functions. §§ 404.1520a(b)(3), 416.920a(b)(3). Four factors are analyzed: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) deterioration or decompensation in work or work-like settings. *Id.* The next steps involve determining the severity of the mental impairment and whether it meets or equals a listed mental disorder. §§ 404.1520a(c), 416.920a(c). Finally, if the impairment is severe, but it does not meet or equal a listed mental disorder, an RFC assessment must be completed. §§ 404.1520a(c)(3), 416.920a(c)(3).

*Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999).

This requires the ALJ to first determine whether the claimant has a medically determinable mental impairment, and then rate the degree of functional limitation resulting from the impairments. *Id*. The four broad functional areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of compensation. 20 C.F.R. §404.1520a(c)(3). If the degree of limitation in each of the first three areas is mild or better then the reviewing authority will generally conclude that the claimant's mental impairment is not severe and will deny benefits. § 404.1520a(d)(1). Application of this process must be documented and the ALJ's written decision must reflect application of the technique and include a specific finding as to the degree of limitation in each of the four functional areas. *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (remanding where the ALJ did not adhere to the special technique); § 404.1520a(e).

Failure to follow this technique is error and results in an inadequately developed record with regards to the four functional areas. *Kohler*, 546 F.3d at 267. Where the court cannot identify findings regarding the degree of claimant's limitations to discern whether the ALJ properly considered all evidence relevant to those areas, the court cannot determine whether the ALJ's decision is supported by substantial evidence and reflects application of the correct legal standards. *Id*. at 269.

> Effective review by this Court is frustrated by the decision's failure to adhere to the regulations. First, because the decision contains no specific findings regarding [claimant's] degree of limitation in the four functional areas by which disabling conditions are rated, the Court cannot determine whether there is substantial evidence for the ALJ's conclusion that [claimant's] impairment, while severe, was not as severe as any listed disabling condition. Second, the ALJ's decision discusses much of the relevant evidence primarily in the context of [claimant's] residual functional capacity to perform work and not in the context of the

> four functional areas identified by the regulations.  Thus, it is not
> clear whether the ALJ adequately considered the entire record
> when determining the severity of [claimant's] impairment, or
> whether he might have found it to equal the severity of a listed
> condition had he followed the regulations and made specific
> findings regarding [claimant's] degree of limitation in each
> functional area.  It also is not clear whether the ALJ would have
> arrived at the same conclusion regarding [claimant's] residual
> functional capacity to perform work had he adhered to the
> regulations.

*Id.* at 267-68.

The record supports the ALJ's finding that Plaintiff had no limitation in activities of daily living.  (T. at 17.)  In support of his finding, the ALJ explained that Plaintiff told Dennis Noia, Ph.D., the consultative psychological examiner, that he could dress, bath, and groom himself with assistance from his wife, that he got along with friends and family, socialized with family, and watched television.  (T. at 17, 422.)  Additionally, consultative medical expert Eric Puestow, M.D., an endocrinologist, opined that Plaintiff was able to go shopping, travel without a companion for assistance, ambulate without using an assistive device, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare simple meals, feed himself, care for his personal hygiene, and sort, handle, and use paper files.  (T. at 883.)  At the January 6, 2015, hearing, Plaintiff testified he is able to drive a car and he spent time at home watching movies, doing crossword puzzles, and reading the newspaper.  (T. at 44-45.)

Plaintiff also completed a function report as part of his application for benefits.  (T. at 290-94.)  He acknowledged he cared for his children and wife, socialized with them and drove them to the store; fed his pets; went outside daily; drove a car; went grocery shopping; was limited in his ability to go fishing; and enjoyed playing with his children.  *Id.*

G. Kleinerman, M.D., State agency psychiatric consultant, reviewed the entire record

and opined that Plaintiff would have no restriction in activities of daily living.  (T. at 97, 424-27.)  State agency psychiatric consultants are qualified experts in the field of Social Security disability, and their opinions can constitute substantial evidence in support of an ALJ's decision.  *See* 20 C.F.R. § 404.1512(b)(6); Social Security Ruling (SSR) 96-6p.

The record also supports the ALJ's finding that Plaintiff had no limitation in social functioning.  (T. at 17.)  Plaintiff lived with his family, cared for his children, reported getting along with family, and socialized with them as well.  ( T. at 290-94, 422.)  Dr. Noia opined Plaintiff had no limitation in his ability to relate to and interact well with others.  (T. at 423.)  Dr. Kleinerman reviewed the record and opined that Plaintiff would have no difficulties in maintaining social functioning.  (T. at 97, 424-27.)  The ALJ further noted that the longitudinal medical evidence in the record showed Plaintiff interacted appropriately with medical personnel during examinations.  (T. at 17.)

With respect to Plaintiff's concentration, persistence, or pace, the ALJ found that Plaintiff had a mild limitation.  *Id*.  The ALJ pointed out that Dr. Noia's mental status examination revealed intact attention, concentration, and memory, with average intellectual functioning and good insight and judgment.  (T. at 17, 422.)  Dr. Noia opined Plaintiff had no limitations in the ability to understand and follow simple instructions, to perform simple and complex tasks, maintain attention and concentration for tasks, attend to a routine and maintain a schedule, learn new tasks, and make appropriate decisions.  (T. at 422-23.)  He also opined Plaintiff would have a mild limitation in the ability to deal with stress.  (T. at 423.)  The record is also replete with consistently normal or largely normal mental status examinations finding Plaintiff had intact attention and concentration.  (T. at 686-93, 702, 711, 720, 728, 735, 739, 743.)  After his review of the record evidence, Dr. Kleinerman opined Plaintiff had no difficulties in maintaining concentration, persistence, or pace.  (T. at 97, 424- 27.)

The record does not reveal any evidence of repeated episodes of decompensation of extended duration.   Dr. Kleinerman also noted that the record did not include any episodes of decompensation.  (T. at 97, 424-27.)  Accordingly, the ALJ properly found Plaintiff had no such episodes.  (T. at 17.)

Further, a review of the notes from treating family practitioner, Andrew Hathaway, M.D., does not support Plaintiff's claim regarding the severity of his mental impairments. While Dr. Hathaway or other medical professionals from his office who treated Plaintiff occasionally noted a history of depression, and prescribed medications for depression and anxiety, notations also indicate Plaintiff's memory is consistently intact, he was alert and oriented, and his mood, affect, and judgment were normal.  (T. at 346, 348, 351, 356, 658, 675, 678, 686-93, 702, 711, 720, 725, 735, 738, 742.)  Even when Plaintiff complained of insomnia, depression and moodiness, his mental status exams were normal.  (T. at 392, 727, 735.)

Accordingly, this Court concludes that the ALJ did not err in finding Plaintiff's mental impairments to be non-severe.  The medical evidence in the record showed that the mental impairments did not limit Plaintiff's ability to do basic work activities.  Rather, the reports of mental issues were minor, and apparently managed by medications.  Plaintiff did not receive any special treatment with mental health professionals, and he continued to engage in daily activities.  In short, the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on Plaintiff's ability to work.  *See Perez*, 970 F. Supp. 2d at 271.

### B.    Opinion Evidence and the RFC Determination

Plaintiff argues the ALJ allocated inadequate weight to the opinions of Plaintiff's treating family physician, Dr. Hathaway, in contravention of the so called "treating physician rule" and

its caveats.  (Dkt. No. 10 at 7-11.)  In response, the Commissioner argues that the ALJ properly evaluated all of the medical evidence.  (Dkt. No. 13 at 11-17.)

A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.  20 C.F.R. § 404.1546(c).  In determining the RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  20 C.F.R. § 404.1545(a).  Age, education, past work experience, and transferability of skills are vocational factors to be considered.  *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Physical abilities are determined by evaluation of exertional and nonexertional limitations.  Exertional limitations include the claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle.  20 C.F.R. § 404.1569a(b).  Nonexertional limitations include mental impairments and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id*. §404.1569a(c).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and nonexertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). "In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." *Roat*, 717 F. Supp. 2d at 267 (citation omitted). "RFC is then used to determine the particular types of work a claimant may be able to perform." *Whittaker*, 717 F. Supp. 2d at 440.

1.    <u>Evaluation of Medical Opinions</u>

The medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals. "If . . . a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence . . . [it] will [be] give[n] controlling weight." 20 C.F.R. § 404.1527(c)(2). "Medically acceptable techniques include consideration of a patient's report of complaints, or the patient's history, as essential diagnostic tools." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Generally, the longer a treating physician has treated the claimant and the more times the claimant has been seen by the treating source, the more weight

the Commissioner will give to the physician's medical opinion.  *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).

An opinion from a treating source that the claimant is disabled cannot itself be determinative.  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).  However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion.  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

"An ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted).  This analysis must be conducted to determine what weight to afford any medical opinion.  20 C.F.R. § 404.1527(c). This is necessary because the ALJ is required to evaluate every medical opinion received.  *Id.* These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)-(6).

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and is contradicted by other substantial evidence in the record.  *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed

controlling.  And the less consistent that opinion is with the record as a whole, the less weight it will be given.").  Other findings, including the ultimate finding of whether the claimant is disabled, are reserved to the Commissioner.  *Snell,* 177 F.3d at 133; 20 C.F.R. § 404.1527(d).

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion.  20 C.F.R. § 404.1527(c)(2).  This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases."  *Halloran*, 362 F.3d at 33 (citing *Snell*, 177 F.3d at 134).  Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.  *Snell*, 177 F.3d at 133; *Halloran*, 362 F.3d at 32-33.  However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion.  *Schaal*, 134 F.3d at 504.

### 2.   Opinions of Andrew Hathaway, M.D.

Plaintiff argues that the opinions of Dr. Hathaway should have been given greater, if not controlling weight.  (Dkt. No. 12 at 8-9.)  For the reasons discussed below, the Court agrees with the Commissioner that the ALJ's assignment of "reduced weight" to Dr. Hathaway's opinions was proper because the opinions were not consistent with each other, nor were they consistent with other opinions or Dr. Hathaway's own treatment records, and the medical evidence overall.  (T. at 22-23; Dkt. No. 13 at 12-17.)

Dr. Hathaway completed medical source statements dated April 11, 2014, September 26, 2014, and January 23, 2015.  (T. at 632-35, 859-62.)  In the first statement, Dr. Hathaway opined Plaintiff was moderately limited in walking, standing, sitting, lifting, carrying, bending, pushing, pulling, bending, and climbing stairs.  (T. at 633.)  Dr. Hathaway found no evidence of

limitations regarding Plaintiff's use of his hands, nor any mental limitations except that he would be moderately limited in functioning at a consistent pace. *Id.* Dr. Hathaway noted Plaintiff could not stand or walk greater than 15-30 minutes at a time, and he was restricted to lifting no more than 15 pounds. *Id.* Notably, Dr. Hathaway expected the restrictions to last only 4 to 6 months. *Id.* In September of 2014, Dr. Hathaway opined that Plaintiff was very limited in walking, standing, and climbing stairs; moderately limited in lifting, carrying, pushing, pulling, and bending, and maintaining appropriate social behavior; and he had no limitations in sitting, using hands, and all other mental functions. (T. at 635.) Again, these limits were expected to last 4 to 6 months. *Id.* Four months later in January of 2015, Dr. Hathaway opined Plaintiff was unable to do "low stress" jobs due to "severe generalized anxiety disorder uncontrolled with agoraphobia." (T. at 859.) He opined Plaintiff could only stand/walk less than 2 hours in an 8 hour workday, and only sit about 2 hours in an 8 hour work day. *Id.* Dr. Hathaway further opined Plaintiff would likely be absent more than 4 days per month and his pain or other symptoms would interfere with attention and concentration constantly. (T. at 861.)

Plaintiff argues that the ALJ erred by failing to consider the regulatory factors when assigning Dr. Hathaway's opinion "reduced weight." (Dkt. No. 10 at 8.) Plaintiff also alleges the ALJ wrongly noted that a conflict existed in the various opinions of Dr. Hathaway. *Id.* at 10. Though Plaintiff contends that Dr. Hathaway's opinion should have been provided more, if not controlling weight, the Regulations provide that the opinion of a treating source will be given controlling weight only when it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. *See*

20 C.F.R. § 404.1527(c); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1 (SSA July 2, 1996).

As the ALJ discussed, Dr. Hathaway's opinion was not consistent with other substantial evidence of record, including Dr. Hathaway's own treatment notes.  (T. at 23.)  For instance, in the time period between Dr. Hathaway's first source statement in April 2014 and the last source statement in January 2015, Dr. Hathaway's progress notes indicate Plaintiff's mood, affect, eye contact, and judgment were appropriate, and his memory was intact.  (T. at 702, 711, 720, 725, 728, 735, 739, 743.)  While Dr. Hathaway reported on August 6, 2014, that Plaintiff was "aware that his anxiety is significant and that specialist consult is needed" (T. at 728), the ALJ noted Plaintiff never saw a psychiatric specialist.  (T. at 23.)  At that same encounter, Dr. Hathaway noted in his objective findings that Plaintiff had a "normal mood and affect.  His behavior is normal.  Thought content normal.  He is not agitated."  (T. at 728.)  Consultant Dr. Noia found Plaintiff's thought processes coherent, his mood calm, his attention, concentration, and memory intact, and his judgment and insight good.  (T. at 422.)

In physical exams, Dr. Hathaway found Plaintiff had some back pain, and leg weakness on April 7, 2014, and referred Plaintiff to a back specialist.  (T. at 702.)  On May 6, 2014, Dr. Hathaway noted Plaintiff had lumbar pain with radiculopathy.  (T. at 711.)  Plaintiff was seen by Richard Distefano, M.D., at Syracuse Orthopedic Specialists, P.C. ("SOS"), on May 29, 2014, for consultation requested by Dr. Hathaway for the lumbar spine complaints.  (T. at 469.)  On exam, Plaintiff's gait and coordination were normal, he ambulated well, he appeared to be in no pain, and his station was normal, but he had mild tenderness over the midline of his lumbar spine.  (T. at 471.)  Dr. Distefano referred Plaintiff for chiropractic care and apparently did not

treat Plaintiff again.  (T. at 472.)  On June 18, 2014, Plaintiff was negative for back pain on exam

by Dr. Hathaway, and he had normal range of motion.  (T. at 719-20.)  In the last treatment note

of February 21, 2014, by Christopher Fatti, D.P.M., of SOS and who treated Plaintiff's diabetic

foot problems, Dr. Fatti found Plaintiff's coordination normal, and he was healing well with no

evidence of complications.  (T. at 467.)  Dr. Fatti recommended Plaintiff wear extra depth

diabetic shoes, but did not note any other ambulatory limitations.  *Id.*

Plaintiff's argument that the ALJ failed to appropriately consider the regulatory factors

when assigning Dr. Hathaway's opinion non-controlling weight is without merit.  (*See* Dkt No.

10 at 8.)  Here, the ALJ considered the length, nature, and extent of the treating relationship, and

the consistency of the opinion with other evidence of record including Dr. Hathaway's own

treatment record and source statements.  (T. at 22-23.)

Based upon the above, the Court finds that the ALJ gave good reasons for affording

"reduced weight" to Dr. Hathaway's opinions.

3.    Opinions of Eric Puestow, M.D.

Plaintiff argues that the ALJ erred in giving "significant weight" to the February 3, 2015,

opinion of endocrinologist Dr. Puestow, which was based upon a record review.  (Dkt. No. 10 at

9.)  Plaintiff also asserts his opinion deserves little weight because Dr. Puestow did not

personally examine Plaintiff.  *Id.*  Plaintiff further argues Dr. Puestow's opinion should not be

afforded any weight because "he has personally not examined anyone in over two decades, he is

not up to date with his continuing legal [sic] education requirements because he is 'grandfathered

in'. . . , he is not familiar with the Administration's *Medical Expert Handbook* . . . , he attempted

to play vocational expert . . . , and . . . he attempted to play fact-finder when he stated, which

clearly smacks of anti-claimant bias, that all treating sources act as advocates and do not base their opinions upon their medical records." *Id.* Plaintiff also claims "the ALJ's violation of the Treating Physician Rule and then lying about [Dr. Puestow's] testimony in his Decision are errors of law . . . ." *Id.* at 11.

The ALJ noted he gave significant weight to the opinions of Dr. Puestow because of "his programmatic expertise, his review of the claimant's medical records, and the consistency of his opinions with the overall medical evidence." (T. at 22.) Dr. Puestow's opinions were included in written interrogatories and testimony at two hearings before the ALJ when he was subject to cross examination by Plaintiff's attorney. (T. at 59-70, 75-78, 873-83.) In his written interrogatory responses, Dr. Puestow opined Plaintiff could lift and carry up to 10 pounds occasionally; he could sit for 4 hours and stand or walk up to 30 minutes at one time without interruption; he could sit for a total of 8 hours and stand or walk for a total of 2 hours each in an 8 hour work day; he had complete use of his right hand continuously without limitation and the same for his left hand except he could only occasionally push/pull with that hand; and he could never use his feet for operation of foot controls. (T. at 879-80.) Dr. Puestow further opined Plaintiff could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, but he could never climb ladders or scaffolds. (T. at 881.) As for environmental limitations, Dr. Puestow found Plaintiff had none, except that he could never work from unprotected heights. (T. at 882.)

Here, the Court finds that the ALJ provided good reasons for assigning "significant weight" to Dr. Puestow's opinions. (T. at 22-23.) As an initial matter, the ALJ did not credit Dr. Puestow's postural limitations because those limitations were inconsistent with other evidence in

the record and Plaintiff's activities of daily living. (T. at 22.) However, the ALJ utilized Dr.

Puestow's opinion in the RFC finding Plaintiff capable of sedentary work with additional

restrictions on sitting, standing, walking, and the other limitations in the RFC. (T. at 19.)

The ALJ appropriately discussed the consistencies between Dr. Puestow's opinion and

Plaintiff's medical records. (T. at 22-23.) For instance, Dr. Puestow testified that his review of

the medical evidence showed no significant support for any sitting limitations, but the Plaintiff's

ability to stand and walk was somewhat limited by his diabetic condition although he could stand

and walk for 2 hours in an 8 hour work day. (T. at 61-62.) Dr. Puestow noted there was nothing

in Plaintiff's records about his lumbar complaints that would limit Plaintiff's ability to sit. (T. at

62.) For example, Dr. Distefano indicated on May 29, 2014, after Plaintiff's toe amputations,

that Plaintiff had a normal gait, ambulated well, and was able to climb on the exam table without

assistance. (T. at 471.) On further exam, Plaintiff had normal range of motion in his entire spine

with the exception of moderate limitation with some mild tenderness in his lumbar spine. *Id.*

Still, the motor exam of both upper and lower extremities was normal, strength was equal, and he

had normal sensation to touch without deficits. *Id.*

As for Plaintiff's mental status, he claims the ALJ lied about Dr. Puestow's testimony.

(Dkt. No. 10 at 11.) In this regard, Dr. Puestow testified Plaintiff's attention, concentration,

persistence, and pace would be affected by his blood sugar levels because Plaintiff would be

fatigued "and not at optimum performance level," but declined to specify the degree of

limitation. (T. at 77-78.) Still, Dr. Puestow noted Plaintiff could do sedentary work (T. at 78)

and the ALJ relied on that opinion in finding Plaintiff capable of sedentary work with

restrictions. (T. at 23-24.) This is not a falsehood on the ALJ's part, but rather a reasonable

interpretation of Dr. Puestow's testimony and opinions in the record.  Further, the record contains an abundance of mental status examinations by Dr. Hathaway as described above, and other treating sources, where Plaintiff's attention and concentration were intact.  (T. at 471, 686-93, 702, 711, 720, 728, 735, 739, 743.)  The ALJ must weigh the evidence in the record and reach an RFC based upon the record as a whole; the RFC need not perfectly align with any one medical opinion.  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Accordingly, the Court finds the ALJ gave good reasons for assigning Dr. Puestow's opinion "significant weight."

### 4.  Opinions of Dennis Noia, Ph.D. and G. Kleinerman, M.D.

Plaintiff does not raise any issues in the second point of his brief regarding the opinion evidence from consulting psychologist Dr. Noia who performed an examination of Plaintiff, and psychiatrist Dr. Kleinerman who conducted a record review.  (T. at 94-102, 420-427.)  The ALJ gave "significant weight" to both opinions "due to their programmatic expertise and the consistency of their opinions with each other and the overall medical evidence, including the lack of specialized treatment from mental health professionals."  (T. at 22.)  Dr. Noia noted Plaintiff complained of symptoms of depression, but found his demeanor and responsiveness to questions as cooperative, and his manner of relating, social skills, and overall presentation were adequate.  (T. at 421.)  On further exam, Plaintiff's speech was fluent, his voice clear, and his expressive and receptive language skills were adequate.  (T. at 421-22.)  His thought processes were coherent and directed, his affect appropriate, his mood was calm, and his sensorium was clear.  (T. at 422.)  He was appropriately oriented in all spheres, and his attention, concentration, and memory were intact.  *Id.*  His cognitive functioning was average and his insight and

judgment were good.  *Id.*  Vocationally, Dr. Noia opined Plaintiff had no limitations in

understanding and following simple instructions, performing simple or complex tasks,

maintaining attention and concentration, attending to a routine and maintaining a schedule,

learning new tasks, making appropriate decisions, and relating to and interacting well with

others.  (T at 422-23.)  Plaintiff had mild limitations with his ability to deal with stress, but he

had no problems managing his funds.  (T. at 423.)  Dr. Kleinerman noted no restrictions of daily

living, or difficulties in social functioning, or maintaining concentration, persistence or pace.  (T.

at 97.)

The opinions of Dr. Noia and Dr. Kleinerman further support the RFC determination of

the ALJ and the opinions are consistent with other opinion evidence and other medical evidence

of record.

### C.    Credibility Evidence and the RFC Determination

In addition to reviewing the medical evidence in determining the RFC, the ALJ must

review the credibility of the claimant.  The Court reviews an ALJ's findings of fact under a

substantial evidence standard.  "It is the function of the Commissioner, not the reviewing courts,

to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the

claimant."  *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)

(citation and internal punctuation omitted).  To satisfy the substantial evidence rule, the ALJ's

credibility assessment must be based on a two-step analysis of pertinent evidence in the record.

20 C.F.R. § 404.1529; *Genier*, 606 F.3d at 49; SSR 96-7p, 1996 WL 374186, at *5 (SSA July 2,

1996).  The ALJ is required to consider all of the evidence of record in making his credibility

assessment.  *Genier*, 606 F.3d at 50; 20 C.F.R. § 404.1529(a)(3).

First, the ALJ must consider "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms."  SSR 96-7p, 1996 WL 374186, at *2.  This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms.  *Id.*  If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  *Id.*  An individual's statements about pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled.  *See Grewen v. Colvin*, No. 1:11-CV-829, 2014 WL 1289575, at *4 (N.D.N.Y. Mar. 27, 2014) (while a "claimant's subjective complaints are an important part of the RFC calculus . . . subjective symptomatology by itself cannot be the basis for a finding of disability . . . [and] [a] claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged."); *see also* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529; SSR 96-7p.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence."  *Genier*, 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(a)); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be

expected to produce the alleged symptoms); *see also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of [an individual's statements is their] consistency, both internally and with other information in the case record.").  This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities.  *Genier*, 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about his impairments, his restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings.  *Id.* (citation omitted).

A claimant's "symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone."  SSR 96-7p, 1996 WL 374186, at *3.  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve pain or symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to pain symptoms. 20 C.F.R. § 404.1529.

Here, the ALJ found Plaintiff's medically determined impairment could reasonably be expected to cause the symptoms alleged by Plaintiff. (T. at 20-21.) However, the ALJ also found Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (T. at 21-22.)

Plaintiff argues the ALJ erred in the assessment of her credibility. (Dkt. No. 10 at 12-13.) Plaintiff also claims the ALJ did not apply the appropriate legal standards in determining his credibility, but he does not point out any specific errors or contest any of the ALJ's findings. The Court disagrees and concludes the ALJ's credibility finding was proper and supported by substantial evidence. (*See* Dkt. No. 13 at 17-20.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis*, 62 F. Supp. 2d at 651 (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 2, 1999)); *Ferraris*, 728 F.2d at 587. "A finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled). "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence." *Id*. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). The ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999)); *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 WL 430547, at *6 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.").

In this case, the ALJ applied the appropriate standards in assessing the credibility of Plaintiff's statements regarding the severity of his symptoms and limitations. (T. at 19-22.) In making his credibility assessment, the ALJ considered a number of factors, including Plaintiff's daily activities, and the discrepancies between Plaintiff's various statements and testimony, and the various treatment notes of his providers. 20 C.F.R. § 404.1529; SSR 96-4p; SSR 96-7p. The determination that Plaintiff could perform sedentary work with restrictions is consistent with the clinical findings and opinions of the record. Under certain circumstances a subjective experience of pain may support a finding of disability, *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (citing *Gallagher v. Schweiker*, 679 F.2d 82 (2d Cir. 1983)), but this is not such a case. A claimant who alleges disability based on pain does not have to provide direct medical evidence confirming the extent of the pain, however there must be medical signs and laboratory findings

that show that the claimant has a medical impairment which could reasonably be expected to produce the pain. *Id.*; 20 C.F.R. § 404.1529.

Here, contrary to Plaintiff's argument that the ALJ's credibility analysis was flawed, the ALJ considered Plaintiff's subjective allegations of disabling symptomology. (T. at 17-24.) An individual's subjective complaints shall not alone be conclusive evidence of disability; there must be medical signs or other findings which show the existence of a medical condition that reasonably could be expected to produce the symptomatology alleged and that, considered with all the evidence, demonstrates that plaintiff is disabled. 20 C.F.R. § 404.1529(b); SSR 96-7p. The ALJ discussed Plaintiff's activities of daily living, his treatment history, his testimony, and his subjective complaints. (T. at 17, 20-21.) The ALJ identified several inconsistencies in the record that diminished Plaintiff's credibility or where he made statements that indicated that he was not as disabled as alleged. Specifically, Plaintiff testified that he was unable to walk for more than five minutes without using a cane and required a wheelchair to go shopping, yet a discharge summary from a July 2013 hospitalization stated that Plaintiff was able to "ambulate without difficulty," and Dr. Puestow opined, after reviewing the record, that Plaintiff did not require the use of a cane to ambulate. (T. at 20-21, 43-44, 397, 879.) Additionally, treatment notes from Plaintiff's treating physicians, as outlined by the ALJ, fail to establish the debilitating limitations in walking, standing, and sitting. (T at. 20-23; *see, e.g.*, T. at 368, 397, 630-31, 719-20, 728, 735, 739, 743.) Plaintiff also complained of disabling symptoms from his mental impairments; however, as discussed above, Plaintiff did not have a severe mental impairment and mental status examinations were largely normal. (T. at 20, 686-93, 702, 711, 720, 728, 735, 739, 743). Plaintiff further complained of severe side effects from his medications, but those complaints are not supported by any treatment records. (T. at 20; *see, e.g.*, T at 686-87, 692-93, 701-02, 711, 719-20.)

In this case, as noted, the ALJ found Plaintiff's allegations of disabling symptomatology were not credible to the degree alleged.  (T. at 22.)  The ALJ determines issues of credibility, and deference should be given to his judgment because he heard Plaintiff's testimony and observed his demeanor.  *See Garrison v. Comm'r of Social Sec.*, No. 08-CV-1005, 2010 WL 2776978, at *5-7 (N.D.N.Y. July 14, 2010).

In consideration of all of the above, the ALJ did not err in his assessment of Plaintiff's credibility and remand is not warranted under these circumstances.  Accordingly, the Court finds the ALJ's determination of the Plaintiff's RFC is based upon proper legal standards and is supported by substantial evidence.

### D.    Step Five Determination

Plaintiff lastly argues that the ALJ erred in relying on the testimony of a vocational expert to determine he was capable of performing jobs that exist in significant numbers in the national economy.  (Dkt. No. 10 at 13-14.)  Plaintiff contends the hypothetical questions posed to the vocational expert were not based upon substantial evidence.  *Id*.  The Court disagrees and finds the ALJ appropriately posed questions based upon the RFC determination which, as set forth above, the Court finds supported by substantial evidence.  (*See also* Dkt. No. 13 at 20.)

Generally, the Commissioner meets his burden at the fifth step by resorting to the applicable Medical-Vocational Guidelines, otherwise known as "the grids."  *Rosa*, 168 F.3d at 78 (citing omitted).  The grids take into account the claimant's RFC in conjunction with the claimant's age, education, and work experience.  *Id*.  "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy."  *Id*.

"[E]xclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations." *Id.* (finding the ALJ erred in applying the grids to deny benefits in a case where it was undisputed that the claimant suffered from nonexertional impairments). "The Grids are inapplicable in cases where the claimant exhibits a significant nonexertional impairment." *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013). This is where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work. *Id.* (citing *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)). An impairment is non-negligible when it so narrows a claimant's possible range of work as to deprive her of a meaningful employment opportunity. *Id.* (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids).

If a claimant has nonexertional limitations that significantly limit the range of work permitted by his exertional limitations, the ALJ is required to consult with a vocational expert. *Zabala*, 595 F.3d at 410 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 986)). A nonexertional limitation is one imposed by the claimant's impairments that affect his ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997)). The existence of nonexertional limitations does not automatically preclude reliance on the grids, or require that the ALJ consult a vocational expert. *Id.* Where the claimant's nonexertional limitations did not result in an additional loss of work capacity, an ALJ's use of the grids is permissible. *Zabala*, 595 F.3d at 411.

However, when a vocational expert testifies, the expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556 (GLS), 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004). A vocational expert's testimony is useful only if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1984) (citation omitted). The ALJ is responsible for determining the claimant's capabilities based on all the evidence, and the hypothetical questions must present the full extent of the claimant's impairments to provide a sound basis for the vocational expert's testimony. *Colon*, 2004 WL 1144059, at *6. However, there must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." *Id.* (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983)).

Here, the ALJ considered Plaintiff's RFC, age, education, and work experience, and did not rely exclusively on the grids to make the step five determination that Plaintiff was not disabled. (T. at 25-26.) Rather, the ALJ obtained the testimony of a vocational expert to determine the extent to which Plaintiff's ability to perform all of the requirements of sedentary work has been impeded by his additional limitations. (T. at 25.) The vocational expert was asked hypothetical questions conforming to the RFC as determined by the ALJ and conforming to Plaintiff's vocational factors such as age, background, and work experience. (T. at 88-90.) In this case, the substantial record evidence supports the assumptions upon which the vocational expert based her opinions. The ALJ then determined Plaintiff was capable of adjusting to other work that existed in the national economy in significant numbers based upon the testimony of the

vocational expert, and considering Plaintiff's age, education, work experience, and RFC. (T. at 25-26.) Therefore, a finding of not disabled was appropriate under the framework of the rules. Accordingly, remand is not warranted on this ground.

In light of the foregoing, the Court finds the ALJ's decision was based upon correct legal standards and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the SSA. 20 C.F.R. §404.1520(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED** and Defendant's motion for judgment on the pleadings be **GRANTED** and the Complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs*., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 15, 2018
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge